[No. 50331-1. En Banc. October 11, 1984.]

THE STATE OF WASHINGTON, *Respondent,* v. CHARLES MARTINEZ JACKSON, *Petitioner.*

*Charles Martinez Jackson,* pro se, and *Nancy L. Talner* of *Washington Appellate Defender Association,* for petitioner.

*Norm Maleng, Prosecuting Attorney,* and *Linda G. Walton, Supervising Deputy,* for respondent.

ROSELLINI, J.—Petitioner Charles Jackson appeals his judgment and sentence on one count of indecent liberties

and one count of second degree rape. He contends the trial court erred in admitting evidence of a 1974 assault. We find that the trial court erred in not establishing a record and in admitting the prior incident. We find, however, no prejudice to petitioner.

## I

Petitioner's convictions arise from the following events:

On August 31, 1981, Kim, 12 years old, was walking home from school when a man came up behind her, put his hand over her mouth, and carried her into the woods. He wrapped a cloth around her eyes, punched her in the stomach, and engaged in sexual intercourse with her. The man was not immediately apprehended.

On September 14, 1981, Suzanne, 14 years old, was walking home from school when a man grabbed her from behind and put his hand over her mouth. Two witnesses saw the man move his hips against the girl's buttocks. A neighbor then yelled at the man and scared him away. Petitioner Charles Jackson was apprehended a short distance from the scene, in a cul–de–sac where he had parked his car. The neighbor identified petitioner as the man he had seen with Suzanne.

Police arrested petitioner and charged him with taking indecent liberties for the incident with Suzanne. Subsequently, petitioner was also charged with the second degree rape of Kim. Kim later identified petitioner in court.

Prior to trial, petitioner moved to suppress testimony regarding a 1974 incident in which he assaulted Cheryl, then age 13. Cheryl had been walking home from school in West Seattle when she was grabbed from behind and pulled into an alley near her home. The petitioner's car was parked nearby. When Cheryl screamed and a neighbor drove by, petitioner released her.

In support of the motion to suppress, petitioner argued that the 1974 incident was not sufficiently similar to the charged crimes to meet the requirements of ER 404(b). The State contended that this evidence was relevant to prove

that Jackson was the man who raped Kim and also to prove that, when petitioner touched Suzanne, he did so with sexual motives.

The trial court ruled that the prior incident was admissible because it was "sufficiently similar" to the charged crimes. The court cited the fact that both Kim and Suzanne were approached while walking home from school alone; both girls were about 13, and both were attacked from behind. The court did not mention the possible prejudicial effect of the evidence, nor did it specify the purpose for which the evidence was admissible.

At trial, in addition to the evidence of the 1974 assault, the prosecution produced the testimony of the two eyewitnesses to the incident with Suzanne. These witnesses, a neighbor and his daughter, both identified petitioner.

Kim identified petitioner, from his eyes and his height, as the man who raped her. She also said that the rapist had used some type of cream during the rape. After the second incident, a jar of Vaseline and a gauze cloth were found in the patrol car in which petitioner had been detained. Petitioner, on the other hand, testified that he had never seen Kim before and that the Vaseline cream did not belong to him. A State witness, a chemist, testified that the semen removed from Kim's vagina contained no sperm. He concluded the semen probably had been deposited by a man who had had a vasectomy or was for some other reason aspermic. In response, petitioner presented test results which showed that his sperm count is normal. On rebuttal, however, the chemist said that it was nonetheless possible for petitioner to have deposited the semen found in Kim.

Petitioner raised two affirmative defenses. As to the rape charge, petitioner presented an alibi. As to the indecent liberty charge, petitioner admitted touching the girl but denied any sexual motivation. Instead, he asserted that he grabbed her and accidentally touched her after he thought he heard her make a derogatory comment.

The jury was instructed that it could consider the 1974 incident "for the limited purpose of determining whether it

tend[ed] to prove the identity of the defendant, intent or motive of the defendant, absence of mistake or accident by the defendant or a common scheme or plan by the defendant." Instruction 5.

The jury returned guilty verdicts on both counts. The Court of Appeals, Division One, affirmed the convictions. *State v. Jackson,* 36 Wn. App. 510, 676 P.2d 517 (1984). It reasoned that the 1974 assault was relevant to disprove petitioner's allegations of accident on the indecent liberty charge. While it found error regarding the rape charge, the court concluded it was harmless.

This court granted review. We affirm for the reasons set out below.

We start, as did the trial judge, with ER 404(b). ER 404(b) states that evidence of other crimes, wrongs, or acts is inadmissible to prove the character of a person in order to show that he acted in conformity therewith. Such evidence is admissible, however, to prove motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. If the evidence is admissible for one of these purposes, a trial judge must determine whether the danger of undue prejudice from its admission outweighs the probative value of the evidence. Comment, ER 404.

We have frequently observed that this balancing of probative value versus prejudice should be done on the record. Thus, in *State v. Tharp,* 96 Wn.2d 591, 597, 637 P.2d 961 (1981), we noted:

> [B]efore exercising its discretion to admit the prior conviction and the furlough status, the trial court should weigh the necessity for its admission against the prejudice that it may engender in the minds of the jury. [*State v. Goebel,* 36 Wn.2d 367, 218 P.2d 300 (1950).] Without such balancing and a conscious determination made by the court *on the record,* the evidence is not properly admitted.

(Italics ours.)

In *State v. Saltarelli,* 98 Wn.2d 358, 362–63, 655 P.2d 697 (1982), this court was more specific as to the trial

court's obligations:

> [T]he court must identify the purpose for which the evidence is to be admitted. . . . Only after the court has concluded . . . that the evidence is relevant, can it appropriately balance the probative value against the prejudicial effect under ER 403.

We cannot overemphasize the importance of making such a record. Here, as in cases arising under ER 609, the absence of a record precludes effective appellate review. *See State v. Jones,* 101 Wn.2d 113, 677 P.2d 131 (1984). Moreover, a judge who carefully records his reasons for admitting evidence of prior crimes is less likely to err, because the process of weighing the evidence and stating specific reasons for a decision insures a thoughtful consideration of the issue. These reasons, as well as others, led us to conclude in *Jones* that a trial judge errs when he does not enunciate the reasons for his decision.

We hold that the same rule applies to evidence of prior misconduct admitted under ER 404(b). Indeed, these cases present an even more compelling need for adequate records. In ER 609 cases, the evidence is only admitted for one purpose—to impeach the defendant's credibility. Evidence can be admitted under ER 404, however, for several substantive purposes. Unless the trial court identifies the purpose for which it believes the evidence is relevant, it is difficult for that court (or the reviewing court) to determine whether the probative value of the evidence outweighs its prejudicial effect. *See State v. Saltarelli, supra* at 366.

We conclude, therefore, that the trial court erred. The Court of Appeals analysis to the contrary is incorrect.

## II

We turn now to the substantive question of whether the evidence was admissible for any proper purpose. The Court of Appeals believed the 1974 incident was relevant to negate petitioner's claim of "accident" with respect to the indecent liberties charge. Petitioner's only claim of "accident", however, was his testimony that he touched

Suzanne's mouth when grabbing for her shoulder. Touching her mouth was not the basis of the indecent liberties charge. The basis for that charge was the alleged touching of Suzanne's abdomen and the alleged rubbing of his hips against her buttocks. Petitioner did not claim that this contact was accidental or innocent; he denied that it occurred at all. Accordingly, there was simply no relevant claim of accident which the evidence would negate.

Moreover, even assuming that the claim of accident related to petitioner's sexual contact with the girl, the 1974 incident is not probative on this issue either. The 1974 incident established only a simple assault. It did not establish sexual contact.

■ The only other plausible reason for allowing the admission of this evidence with respect to the indecent liberties charge is the State's theory that it showed petitioner's motive in grabbing Suzanne. This court noted in *Saltarelli,* however, that "[i]t is by no means clear how an assault on a woman could be a motive or inducement for defendant's rape of a different woman almost 5 years later." *Saltarelli,* at 365. Similarly, it is by no means clear how petitioner's attack on Cheryl could be relevant to show that he intended, 7 years later, to take indecent liberties with Suzanne. Cheryl did not allege sexual contact with petitioner; she simply said that she was attacked. Petitioner's nonsexual attack on one girl is not relevant to prove his sexual motives toward another.

We hold that the prior incident was irrelevant and should not have been admitted to prove any aspect of the indecent liberties charge. As we concur in the Court of Appeals analysis concerning the rape charge, we will proceed to the issue of whether these errors were harmless.

■■ Evidentiary errors under ER 404 are not of constitutional magnitude. We must determine, therefore, within reasonable probabilities, if the outcome of the trial would have been different if the error had not occurred. *State v. Robtoy,* 98 Wn.2d 30, 653 P.2d 284 (1982). We conclude it would not.

Regarding the rape conviction, the evidence clearly established petitioner as Kim's assailant. Kim's identification of petitioner, and the gauze and Vaseline used in the rape and found in an area recently vacated by petitioner, represent strong circumstantial evidence of similar modus operandi.

Petitioner's indecent liberty conviction is also firmly established. Petitioner was undoubtedly on the scene and admits touching the girl. His explanation for this contact was implausible and conflicted with the observations of two witnesses.

These facts persuade us that the outcome would not have been different had the 1974 incident not been admitted. Petitioner's convictions are therefore affirmed.

WILLIAMS, C.J., UTTER, BRACHTENBACH, DOLLIVER, DORE, and DIMMICK, JJ., and CUNNINGHAM, J. Pro Tem., concur.

PEARSON, J. (concurring in part, dissenting in part)—I concur with the majority, except with respect to that part of the opinion which holds that the error was harmless as to the rape charge. I agree that the prior act by Jackson is irrelevant to show motive or absence of mistake and that such evidence was erroneously admitted. However, I would characterize the prior act as sexual in nature; thus, the issue is whether the erroneously admitted evidence of a prior sexual act prejudiced Jackson.

Evidentiary errors are prejudicial if, within reasonable probabilities, the error materially affected the outcome of the trial. *State v. Robtoy,* 98 Wn.2d 30, 44, 653 P.2d 284 (1982). Here, the error might have provided the impetus that caused the jury to convict Jackson of the rape; thus, the error cannot be brushed aside as harmless.

The rape issue in the present case is indistinguishable from that same issue in *State v. Saltarelli,* 98 Wn.2d 358, 655 P.2d 697 (1982). In *Saltarelli,* this court held that the admission of an irrelevant prior sexual act was prejudicial. Because the evidence of the prior sexual act might have

been a determinative factor in the rape conviction, and the remaining evidence was not overwhelming, Saltarelli's conviction was reversed and a new trial was granted.

Here, as in *Saltarelli,* the evidence of the prior act by Jackson was sexual in character. The evidence consisted of the testimony of a teen–aged girl, stating that Jackson grabbed her from behind and dragged her into an alley. She screamed and he ran away. Jackson was convicted only of a simple assault, not a sexual assault, as a result of this incident. The jury, however, heard the young victim describe the attack and was not informed that no sexual conviction was obtained against Jackson. Moreover, the evidence of the prior act was colored by the remaining evidence against Jackson involving similar attacks on young girls that definitely were sexual in nature. Therefore, it is likely that the jury believed the prior attack by Jackson was a sexually motivated act.

Here, as in *Saltarelli,* the remaining evidence of the rape was far from overwhelming. The rape victim identified Jackson only by his eyes and his height. She saw only part of his face during the rape. No other witness identified Jackson as the rapist. Jackson was arrested 2 weeks after the rape; the jar of lubricant and the gauze found in the police car after his arrest may or may not have been the items used by the rapist a full 2 weeks earlier. Thus, it is reasonably probable that the evidence of the prior sexual attack materially affected the outcome of the rape verdict.

In sum, improper admission of prior sexual acts in sex cases is not harmless if, within reasonable probabilities, the jury relied on the irrelevant evidence to convict. The majority departs from the precedent set in *Saltarelli* by holding such error harmless. I would reverse and remand on the rape charge.