FILED
COURT OF APPEALS DIV I
STATE OF WASHINGTON

2018 JUL 16 AM 8: 55




IN THE COURT OF APPEALS FOR THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 76408-0-I |
| | ) | |
| Respondent, | ) | DIVISION ONE |
| | ) | |
| v. | ) | |
| | ) | |
| CHRISTOPHER SHAWN DICHESARE, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | FILED: July 16, 2018 |
| | ) | |

ANDRUS, J. — Christopher Dichesare appeals his conviction for second degree assault, asserting that the trial court abused its discretion in admitting evidence that he had previously threatened his victim if she went to the police. We agree that the court failed to conduct the required ER 404(b) four-part analysis on the record and that the evidence was inadmissible to bolster the credibility of the victim. The error, however, was harmless. We affirm.

## FACTS

Dichesare and his girlfriend, Winter Kirby, lived together with three young children. On June 19, 2015, Dichesare, Kirby, and the children attended a family gathering at the home of Dichesare's father. Several family members observed that Kirby had bruises on her face and arm. Kirby told Dichesare's father and uncle how she had sustained her injuries. After Dichesare and Kirby left, Dichesare's stepmother heard what had happened, called the police, and asked them to check on Kirby and the children.

During this welfare check, police officers observed Kirby's multiple bruises. A visibly emotional Kirby told the officers that, during an argument on June 15, Dichesare had hit and choked her. She consented to having the officers photograph her injuries. Following their investigation, the police arrested Dichesare. The State charged him with second degree assault by strangulation or suffocation and with the aggravating factor of committing the domestic violence assault in the presence of a minor child.

Before trial, the State moved to admit evidence that Dichesare had abused Kirby on prior occasions and had threatened to kill her if she reported the abuse to the police. The State argued that this evidence was admissible under ER 404(b) to bolster Kirby's credibility; it explained why Kirby had not reported the June 15 assault until police contacted her four days later. The trial court excluded evidence of prior abusive acts but allowed the State to introduce evidence of the threats.

At trial, Kirby testified that on June 15, she and her daughter were sitting on the sofa when Dichesare came home. Kirby and Dichesare began to argue. When she tried to get up from the sofa, Dichesare put his hand over her mouth and nose, pushed her down, and held her in that position. Kirby testified that as she attempted to get free, she struggled to breathe. When Dichesare let her go, she left the room and put her daughter to bed. When she returned, he resumed the assault. According to Kirby, she ended up on the floor with Dichesare's hands around her neck. The chokehold impaired her ability to breathe.

The State asked why Kirby did not call 911 immediately after the assault. Kirby testified that she was scared to do so because on a couple of occasions in

2

the previous month, Dichesare had threatened to kill her if she went to the police. According to Kirby, Dichesare said if she called the police, "he would make sure they had a reason to take him to jail."

The court admitted photographs of the bruises Kirby sustained on her face, chest, and legs, injuries Kirby identified as caused by Dichesare during the June 15 attack. Several of Dichesare's family members corroborated her injuries, testifying that they too observed Kirby's bruises when they saw her on June 19. Keith Christensen, the police officer who performed the welfare check, saw bruises on Kirby's forehead, chin, neck, arm, shoulder and leg—the injuries he photographed on June 19. Officer Butch Rockwell also observed these injuries and specifically identified bruising he saw on both sides of Kirby's trachea.

The jury convicted Dichesare as charged.

## DISCUSSION

Dichesare challenges his conviction, asserting that the trial court erred in admitting evidence of the prior threats. Evidence of prior bad acts is inadmissible to prove a person's character and that the person acted in conformity with that character. State v. Gresham, 173 Wn.2d 405, 420, 269 P.3d 207 (2012) (quoting ER 404(b)). Prior bad acts may be admissible when offered for another purpose. Id. Before admitting such evidence, the trial court must (1) find by a preponderance of the evidence that the misconduct occurred; (2) identify the purpose for which the evidence is offered; (3) determine that the evidence is relevant to an element of the crime charged; and (4) weigh the evidence's probative value against its

3

prejudicial effect. Id. The trial court must conduct this analysis on the record. State v. Foxhoven, 161 Wn.2d 168, 175, 163 P.3d 786 (2007).

We review the trial court's decision to admit or exclude evidence for abuse of discretion. Id. at 174. The trial court abuses its discretion where its decision is based on untenable grounds or reasons. Id. An abuse of discretion also occurs where the trial court fails to meet the requirements of an evidentiary rule. Id.

Dichesare contends the trial court failed to conduct the required ER 404(b) analysis, failed to find that the prior threats had probably occurred, failed to find that they were relevant to any element of the crime with which he was charged, and failed to find that the probative value of this evidence was not outweighed by its prejudicial effect. The State asserts that although the court did not explicitly recite the ER 404(b) four-part test, the record demonstrates that the trial court applied the proper analysis.

The trial court excluded evidence of Dichesare's prior assaults as more prejudicial than probative, but allowed the State to introduce evidence that Kirby was afraid to report the charged assault because Dichesare had made recent threatening statements to her. The trial court thus identified the purpose for which the State was offering the evidence. But the court failed to address on the record whether the threats occurred, their relevance to an element of the crime charged, and their probative value versus their prejudicial effect. By failing to conduct the required analysis on the record, the trial court abused its discretion.

But even if, as the State argues, the trial court applied the proper analysis, the evidence was inadmissible under ER 404(b). As indicated in Jury Instruction

4

No. 7, to convict Dichesare of assault in the second degree, the jury had to find that Dichesare intentionally assaulted Kirby by strangulation or suffocation and that this assault occurred in Washington. Unlike the crime of felony harassment, where the reasonableness of a victim's fear is an element of the crime, *see* State v. Ragin, 94 Wn. App. 407, 411, 972 P.2d 519 (1999), the crime of assault does not require such a determination. Because a victim's state of mind is not relevant to an element of the crime charged, the trial court abused its discretion in admitting the prior threat evidence.

Nor is explaining why a victim delayed in reporting a crime a proper basis for admitting the threat evidence. Kirby's pretrial statements regarding the June 15 events were all consistent with her trial testimony. She neither recanted her story nor refused to testify at trial. There was no need to introduce evidence of Dichesare's prior threats to bolster her credibility. In State v. Gunderson, 181 Wn.2d 916, 337 P.3d 1090 (2014), the Supreme Court cautioned trial courts to be extremely careful in determining when prior acts of domestic violence may be admitted to bolster a victim's credibility. In that case, Gunderson was charged with felony violation of a no contact order after his girlfriend's mother, Bonnie, called the police to report that he had assaulted her daughter, Christina, and had driven off with her in his truck. Gunderson, 181 Wn.2d at 919. Christina, however, testified that he did not assault her. Id. at 920. The trial court admitted evidence of two prior domestic violence episodes between Gunderson and Christina to impeach Christina's credibility. Id. at 920-21.

The Supreme Court held that the trial court abused its discretion in admitting evidence of the prior domestic violence assaults because Christina had not provided inconsistent statements regarding the incident. Id. at 924. She had consistently stated that Gunderson had not hit her and that she had voluntarily gotten into his truck. Id. at 925. The Supreme Court limited the admissibility of prior domestic violence incidents to cases where "the State has established their overriding probative value, such as to explain a witness's otherwise inexplicable recantation or conflicting accounts of events." Id. See also State v. Ashley, 186 Wn.2d 32, 47, 375 P.3d 673 (2016) (trial court erred in admitting evidence of prior instances of domestic violence for the sole purpose of bolstering a victim's credibility in the absence of evidence of prior inconsistent statements).

Here, it was the State who first raised the issue of Kirby's delay in reporting; Dichesare did not open the door to this issue through cross examination. There was no evidence that Kirby had ever denied the assault had occurred or that her various reports about the attack were inconsistent. Thus, the State did not establish an "overriding probative value" of this evidence.

The State contends, however, that any error in admitting the evidence was harmless. We agree in this case. Evidentiary errors under ER 404(b) are subject to harmless error analysis. State v. Jackson, 102 Wn.2d 689, 695, 689 P.2d 76 (1984). The error is grounds for reversal only if, within reasonable probabilities, the error materially affected the outcome of the trial. Id. To make this assessment, we measure the admissible evidence of guilt against the prejudice caused by the improperly admitted testimony. State v. Bourgeois, 133 Wn.2d 389, 403, 945 P.2d

1120 (1997). The error is harmless where the improper evidence is minor in comparison to the evidence as a whole. Id.

Dichesare relies on Gunderson to argue that the error was not harmless. The Supreme Court held that the ER 404(b) error in Gunderson required reversal because there was minimal evidence that Gunderson had, in fact, assaulted Christina. Although Bonnie had reported an assault when she called 911 and in a subsequent statement to police, she admitted at trial that she had not actually seen Gunderson hitting Christina, her memory was "kind of a big blur," and Gunderson may have merely been defending himself. Gunderson, 181 Wn.2d at 919-20. Thus, her panicked statement to a 911 dispatcher and to the police contrasted starkly both with her trial testimony and with the consistent version of events Christina provided. Id. at 926.

In contrast, the Supreme Court in Ashley held that erroneously admitting ER 404(b) evidence to bolster a victim's credibility was harmless because the victim had never contradicted herself, weakening any claim she was not truthful, the victim had told the same story to the police shortly after the incident, undermining any claim of recent fabrication, and her story made sense in light of the other evidence in the record. 186 Wn.2d at 47.

This Court finds Ashley to be the more analogous precedent. In this case, as in Ashley, Kirby consistently reported that Dichesare had assaulted her. She never contradicted herself—to family members, to the police, or to the jury. Unlike in Gunderson, there was objective, photographic evidence that an assault had actually occurred. The jury observed Kirby's bruises in the photographs. Members

of Dichesare's family and Officers Christensen and Rockwell saw the injuries within days of the assault and the bruises were consistent with Kirby's account. Measuring this testimony and the photographic evidence against the prejudicial effect of the evidence of Dichesare's threats, we conclude that it is not reasonably probable that the error materially affected the outcome of the trial. The error was harmless.

Affirmed.

Andrus, J.

WE CONCUR: